**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No.:

CHARLES LOWMAN, an individual,

      Plaintiff,

v.

UNIVERSITY OF MIAMI,
a Florida Not For Profit Corporation, and
COLEEN ATKINS, an individual,

      Defendants.

_____/

## COMPLAINT

Plaintiff, CHARLES LOWMAN, by and through undersigned counsel in the above-styled cause, hereby files this Complaint for Damages and Demand for Relief against Defendants, UNIVERSITY OF MIAMI, a Florida Not For Profit Corporation, and COLEEN ATKINS (collectively, "Defendants"), for Sex/Gender Discrimination, Hostile Work Environment, and Retaliation under Title VII of the Civil Rights Act of 1964, as amended; Sex/Gender Discrimination, Hostile Work Environment, Handicap Discrimination, and Retaliation under the Florida Civil Rights Act of 1992; Retaliation under the Florida Private Whistleblower Act; Disability Discrimination, Hostile Work Environment, and Retaliation under the Americans With Disabilities Act of 1990, as amended; and Interference and Retaliation under the Family Medical Leave Act of 1993, and alleges as follows:

## PARTIES

1.    Plaintiff Charles Lowman ("Plaintiff" or "Mr. Lowman") is a natural person and a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

2.     Defendant University of Miami ("Defendant," "Defendant UM," or the "University") is a Florida Not For Profit Corporation organized and existing under the laws of the State of Florida, with its principal place of business at 5187 Ponce De Leon Blvd, Coral Gables, Florida 33146, and is otherwise *sui juris*.

3.     Defendant Coleen Atkins ("Defendant Atkins" or "Dr. Atkins") is a natural person and a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

### JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claims under Florida law form the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share common nuclei of operative facts with his federal law claims, and the parties are identical. Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

5.     This Court has personal jurisdiction over Defendant UM because it is domiciled in Florida.

6.     This Court has personal jurisdiction over Defendant Atkins because she is domiciled in Florida.

7.     Venue is appropriate in this district under 28 U.S.C. § 1391(b)–(c) because Defendants reside in the Southern District of Florida, the tortious acts were committed in this district, the relevant records are maintained in this district, the majority of material witnesses live in this district, and Defendant UM employed Plaintiff in this district.

8.      All conditions precedent to the maintenance of this action, including exhaustion of administrative remedies, have been performed by Plaintiff, have occurred, or have been waived by Defendants.

## FACTUAL ALLEGATIONS

### Background

9.      The University of Miami is a private, non-profit university that provides services in education, research, and health care. It is comprised of several schools and colleges, including the Miller School of Medicine.

10.     The Miller School of Medicine is comprised of more than 1,700 faculty members, twenty-nine (29) clinical and basic science departments, forty-eight (48) centers and institutes, and twenty-four (24) administrative offices.

11.     One such office within the Miller School of Medicine is the Office of Graduate Studies ("OGS"). OGS is responsible for providing centralized support and reporting for several of its graduate programs, including Biomedical Sciences Programs, Physical Therapy Programs, Public Health Sciences Programs, and more.

12.     On or around February 29, 2016, the University hired Mr. Lowman as Director of Programs in OGS.

13.     Mr. Lowman excelled in his role. So much so, that on or around August 1, 2017, the University promoted Mr. Lowman to Executive Director of Programs in OGS.

### Trouble Begins

14.     Mr. Lowman is a homosexual male.

15.     On or around January 19, 2018, Dr. Vladlen Slepak ("Dr. Slepak")—a Professor and Graduate Program Director of the Ph.D. Program in Molecular and Cellular Pharmacology for the Miller School of Medicine—entered Mr. Lowman's office in a rage.

16.     Angered over the recent departure of a colleague, Dr. Slepak displayed physically violent workplace behavior toward Mr. Lowman, banging Mr. Lowman's desk, threatening Mr. Lowman, and slamming Mr. Lowman's door.

17.     Dr. Slepak followed up his outburst and threats by publicly humiliating, berating, and making inflammatory accusations against Mr. Lowman in an email to all the Graduate Program Directors and Mr. Lowman's then-boss.

18.     On or around January 30, 2018, and again on March 2, 2018, Mr. Lowman filed formal complaints against Dr. Slepak.

19.     Dr. Slepak was counseled for his behavior.

20.     On or around March 9, 2018—in a maligned effort to downgrade Mr. Lowman's upcoming performance review—Dr. Slepak emailed Mr. Lowman's then-boss and excoriated Mr. Lowman.

21.     After describing the "many deficiencies in [Mr. Lowman's] professional and personal skills," characterizing Mr. Lowman as "superficial," "cold," and "condescending," and accusing Mr. Lowman of "insensitivity" and having "undeveloped leadership skills," Dr. Slepak concluded with a homophobic remark that the only positive quality Mr. Lowman added to the University was Mr. Lowman's ability to decorate.[1]

---

[1] The stereotype that homosexual men are "interior design aficionados" is a harmful generalization "rooted in misogyny." *E.g.,* Lee Suckling, *Not All Gay Men Are Interiors Experts*, Stuff (Aug. 8, 2017), https://www.stuff.co.nz/life-style/homed/decor/95603828/not-all-gay-men-are-interiors-experts. "By characterizing gay males into having 'feminine' interests like interior design, society puts them on a lower tier (in terms of status and value); just as it does women." *Id.*

22.     Thereafter, and continuing over the next several years, Dr. Slepak took every opportunity to attack and demean Mr. Lowman.

23.     Dr. Slepak's documented animosity toward Mr. Lowman resulted in multiple, repeated requests for Mr. Lowman's termination; Dr. Slepak routinely and frequently gossiped about Mr. Lowman; and Dr. Slepak rallied several other faculty members against Mr. Lowman through nefarious lies.

24.     Although Mr. Lowman was forced to suffer through these frequent, ongoing, and unprofessional attacks, Mr. Lowman continued performing his job at the highest level.

25.     Indeed, in Mr. Lowman's employee performance evaluation for Fiscal Year 2020— in which he earned "Exceeds Expectations"—Mr. Lowman's then-manager tacitly acknowledged the hostile work environment Mr. Lowman endured: "Mr. Lowman has the challenge of interacting with 'difficult' faculty, some of whom do not always uphold the highest professional standards in their interactions. This past year Mr. Lowman has shown an extraordinary level of flexibility and acumen in dealing with these most difficult situations."

26.     Soon, Dr. Slepak's attacks spread to one of Mr. Lowman's subordinates, Mr. Matthew Brandon ("Mr. Brandon"). Mr. Brandon was the only other openly homosexual male within OGS, and the only other OGS employee besides Mr. Lowman who was subjected to such hostility.

**Dr. Coleen Atkins Is Appointed to Lead OGS**

27.     Meanwhile, in or around the Summer of 2021, the head of OGS stepped down. In his place, Coleen Atkins, Ph.D. ("Dr. Atkins"), was appointed Interim Associate Dean of Graduate Education.

28.     In her new role, Dr. Atkins had direct supervisory responsibility over Mr. Lowman.

29.     For Mr. Lowman's Fiscal Year 2022 employee performance evaluation, Dr. Atkins rated Mr. Lowman as "Substantially Exceeds Expectations," calling Mr. Lowman "an exceptional OGS Director" who "has greatly improve[d] the efficiency and performance standards in OGS."

30.     However, Dr. Atkins' feedback was not exclusively professional. Due to Dr. Slepak's continued hostile campaign against Mr. Lowman, Dr. Atkins offered Mr. Lowman unsolicited advice during their face-to-face performance review meeting in which she insinuated that Mr. Lowman should consider acting *less gay*.

31.     Specifically, Dr. Atkins explained: "there are many homophobic individuals at the Medical School, and although you may not be 'out' to all of them, they can tell you are [gay]."

32.     In other words, Dr. Atkins advised that if Mr. Lowman acted less gay, he would have less animosity directed toward him from the homophobic faculty.

33.     On or around October 20, 2022, Mr. Lowman met with Dr. Atkins for a weekly one-on-one meeting.

34.     There, Dr. Atkins conveyed Dr. Slepak's attacks that some faculty members believed Mr. Lowman was giving Mr. Brandon special privileges.

35.     Mr. Lowman clarified to Dr. Atkins that Mr. Brandon is held to the same standards as other OGS team members, and that the insinuation that Mr. Lowman is offering the only other homosexual OGS employee special treatment is homophobic and is not appreciated.

**Mr. Lowman Complains**

36.     Beginning in April 2022, Mr. Lowman complained multiple times on multiple occasions to Dr. Atkins about the discriminatory mistreatment and hostile work environment he had been enduring.

37.     Yet by early 2023, Dr. Slepak's hostile campaign against Mr. Lowman still showed no signs of slowing down, and in fact, began to worsen. After Dr. Slepak began spreading lies about Mr. Lowman's treatment toward female employees, Dr. Slepak's fellow faculty began repeating these lies, including one in a public forum.

38.     Dr. Slepak's campaign continued with aggressive emails to other faculty and OGS members, calls for Mr. Lowman's termination, and passive-aggressive comments to Mr. Lowman that everyone's quality of life would improve if Mr. Lowman were no longer involved in decisionmaking.

39.     Due to these frequent and aggressive attacks—and the University's unwillingness to take action—Mr. Lowman's mental health began to deteriorate.

40.     On or around February 16, 2023, Mr. Lowman filed a formal hostile work environment complaint with HR against Dr. Slepak for his anti-gay hostility and bullying directed toward Mr. Lowman.

41.     Then came the retaliation.

### Dr. Atkins Retaliates

42.     Shortly after Mr. Lowman complained, Dr. Atkins reached out to Mr. Lowman and told him that faculty members were now targeting her for her protecting Mr. Lowman.

43.     Throughout 2022 and into early 2023, Dr. Atkins had regularly praised Mr. Lowman's work and even advocated for him to receive a raise and a promotion. Yet almost immediately after Mr. Lowman's complaint, Dr. Atkins found anything and everything wrong with Mr. Lowman's performance.

44.     When Mr. Lowman shared that he had a competing job offer—which should have resulted in Dr. Atkins advocating for the same retention package she eagerly obtained for similarly situated heterosexual employees—Dr. Atkins ignored it.

45.     Dr. Atkins held several one-on-one meetings with Mr. Lowman in which she shared multiple concerns with Mr. Lowman's performance.

46.     From the centering of text or numbers in excel spreadsheets, to the spacing of words, to the color schemes in tables and charts, to nondescript formatting and typographical mistakes, Dr. Atkins began micromanaging and incessantly criticizing everything Mr. Lowman did.

47.     During their one-on-ones, Dr. Atkins also began characterizing Mr. Lowman using negative terms and made several cryptic statements that led Mr. Lowman to believe he was going to be terminated.

48.     Soon, Dr. Atkins told Mr. Lowman she was halting Mr. Lowman's promotion request—a request she openly supported just one month earlier—because of negative faculty feedback.

**HR Discovers Dr. Atkins Failed to Report Mr. Lowman's Complaints**

49.     Meanwhile, HR discovered that Dr. Atkins never reported any of Mr. Lowman's complaints of discrimination.

50.     On or around March 9, 2023, Dr. Atkins admitted to Mr. Lowman during a one-on-one meeting that Associate Director of Human Resources, Amie Choy ("Ms. Choy"), reminded Dr. Atkins that Dr. Atkins had an obligation to report Mr. Lowman's complaints to the Title IX office as soon as she became aware.

51.      Later that day, Dr. Atkins attempted to cover her tracks by reporting to the Title IX Coordinator that she "was just in a meeting today with Charles Lowman who raised a serious allegation that he feels discriminated against based on his sexual orientation."

52.      After Mr. Lowman corrected the record—that he had made Dr. Atkins aware on multiple occasions; that "[t]oday was not the first time"; and that Dr. Atkins "decided to apologize for failing to report it sooner despite having an obligation to do so"—Dr. Atkins followed up with an email admitting she withheld Mr. Lowman's allegations from the Title IX office.

**Mr. Lowman Requests an ADA Accommodation and Files Another Complaint**

53.      On March 11, 2023, Mr. Lowman submitted a request for ADA accommodations because working under Dr. Atkins and her newfound obsessive oversight and micromanaging—coupled with the already hostile work environment Mr. Lowman had been enduring—had become so stressful that Mr. Lowman began experiencing extreme bouts of anxiety.

54.      On or around March 16, 2024, during a one-on-one with Dr. Atkins, Dr. Atkins told Mr. Lowman she was aware that Mr. Lowman requested accommodations and asked him what his disability was and what specific accommodations he was requesting. Mr. Lowman declined to say.

55.      On or around March 17, 2023, Mr. Lowman filed his formal complaint with the Title IX office, detailing the hostile work environment and discrimination he had been facing. There, he also complained that Dr. Atkins failed to address his earlier complaints.

56.      On or around April 25, 2023, the University granted Mr. Lowman's requested ADA accommodations.

57.      Though the University approved Mr. Lowman's ADA accommodations—by, *inter alia*, granting Mr. Lowman a hybrid telecommuting arrangement, limiting face-to-face meetings

with Dr. Atkins in favor of videoconference meetings, and requiring Dr. Atkins to memorialize instructions in writing—Dr. Atkins did not.

58.     On or around Monday, May 1, 2023, Mr. Lowman filed a complaint with the University about Dr. Atkins' failures to comply with his accommodations. Specifically, Mr. Lowman complained that not only did Dr. Atkins ignore or resist several of the granted accommodations, but she also made clear to Mr. Lowman—through grimaces, pursed lips, and loud sighs—that she was unhappy to comply with his accommodations.

**The Retaliation Continues and Mr. Lowman Requests FMLA Leave**

59.     Throughout April and May 2023, Dr. Atkins continued obsessively micromanaging Mr. Lowman and began drowning him in extra work in an effort to create a paper trail against him.

60.     After Mr. Lowman submitted Mr. Brandon's performance evaluation, Dr. Atkins lowered Mr. Brandon's performance rating without consulting Mr. Lowman, even though she neither supervised Mr. Brandon nor had direct knowledge of his day-to-day activities.

61.     The working environment became so abusive, toxic, and detrimental to Mr. Lowman's health that Mr. Lowman requested intermittent FMLA leave to treat his extreme bouts of anxiety.

62.     On or around May 15, 2023, Mr. Lowman was granted intermittent FMLA leave.

63.     On or around May 15, 2023, Dr. Atkins gave Mr. Lowman the lowest performance rating he had ever received: "Meets Some Expectations."

64.     Combined with the unilateral lowering of Mr. Brandon's rating, the message Dr. Atkins sent was clear: homosexual males were not welcome under her leadership in OGS.

65.     Mr. Lowman wrote a rebuttal to the poor performance evaluation. There, Mr. Lowman complained again:

Unfortunately, Dr. Atkins' views on my performance declined shortly after I filed a hostile work environment complaint against a group of powerful, senior faculty members who targeted me for various unprofessional reasons. Dr. Vlad Slepak, the ringleader of this group, has held a grudge against me since 2018 when I reported him for committing an act of physical violence towards me. He and his senior faculty allies have been exerting significant pressure on Dr. Atkins to take detrimental actions against me since early 2023. Dr. Atkins has admitted to fearing retaliation from these faculty members due to their ability to potentially derail her own career. She chose to align herself with them and began making my job unbearable in an attempt to push me out. She now frequently displays passive-aggressive behavior toward me which makes our interactions challenging. I firmly believe that her serious conflicts of interest, which I reported to Faculty Affairs, compromise her judgment and ability to evaluate me fairly. Fortunately, the University recently conducted an investigation into some of my complaints and agreed that certain MSOM faculty do exhibit unprofessional and targeted behavior towards me. It remains to be seen how the MSOM will address those troubling findings.

Furthermore, Dr. Atkins has been resistant in complying with the reasonable accommodations I requested under the Americans with Disabilities Act (ADA) earlier this semester. Her reluctance to fully comply is an ongoing matter of concern.

**Dr. Atkins Retaliates Again and Interferes with Mr. Lowman's FMLA Leave**

66.     On or around May 30, 2023, Dr. Atkins told Mr. Lowman she was placing him on a Performance Enhancement Plan ("PEP").

67.     On or around June 6, 2023, Mr. Lowman was placed on the PEP.

68.     One of the requirements of the PEP was that Mr. Lowman also place Mr. Brandon—the only other homosexual at OGS—on a PEP as well. This strange requirement only served to reiterate Dr. Atkins' stance that homosexual men were unwelcome under Dr. Atkins' leadership.

69.     Throughout June 2023, Mr. Lowman worked diligently to meet—and did meet—all the requirements of the PEP.

70.     On or around June 27, 2023, Mr. Lowman attempted to utilize intermittent FMLA leave for a period of one (1) day.

71.     While attempting to exercise leave, Dr. Atkins sent Mr. Lowman an email requiring Mr. Lowman to solicit feedback from four different individuals and incorporate their suggestions into his PEP.

72.     Further, Dr. Atkins' email—which discussed Mr. Lowman's PEP—cc'd two individuals who should not have been privy to Mr. Lowman's confidential personnel file.

73.     Dr. Atkins' laborious and highly intensive work request, as well as the breach of Mr. Lowman's confidential personnel file, significantly disrupted Mr. Lowman's attempted exercise of his intermittent FMLA leave, and as a result, Mr. Lowman filed a formal complaint to HR later that day.

74.     In or around July 2023, Dr. Atkins and Mr. Lowman met for his thirty (30) day review.

75.     There, Dr. Atkins told Mr. Lowman she still had a lot of concerns with his performance.

76.     However, after speaking with several other staff members afterward, Mr. Lowman learned that Dr. Atkins had been approaching members of his team in an effort solicit negative information about Mr. Lowman.

77.     Specifically, one OGS staff member told Mr. Lowman that Dr. Atkins aggressively pushed her to share negative information about Mr. Lowman. The staff member told Mr. Lowman:

> It was very clear to me she does not like you and had an agenda for trying to get me to say negative things about you. She put me in a very uncomfortable position because I kept telling her you are doing a great job, but she did not want to hear any of it. She tried to get me to say you were not available to provide me help when I need it. . . . She seemed stunned that I was not just agreeing with her.

78.     Another OGS staff member told Mr. Lowman that Dr. Atkins called her into a meeting and was very determined to get dirt on Mr. Lowman. The staff member told Mr. Lowman:

> She kept trying to get me to say you were doing a poor job as the director and dumping training work on me. That is just not true. I kept trying to steer her to more positive topics because I genuinely like working with you and think you do a good job. She obviously had an ulterior motive for why she was asking me the questions the way she did. It made me really uncomfortable.

79.     Thus, it was clear that Dr. Atkins' "concerns" were mere pretext for continued discrimination and retaliation and had nothing to do with Mr. Lowman's actual performance.

### Mr. Lowman Complains Again and Takes FMLA Leave

80.     On or around July 11, 2024, Mr. Lowman complained again to the Title IX coordinator.

81.     After feeling as though his frequent, repeated complaints were falling on deaf ears, on or around July 24, 2023, Mr. Lowman complained again, this time to people he felt might actually listen: Dr. Willy Prado, Chief Academic Officer and University Provost; Dr. Latha Chandran, Executive Dean for Education, Miller School of Medicine; Ms. Alison Mincey, Senior Vice President and Chief HR Officer; and Dr. Henri Ford, Dean and Chief Academic Officer for the Miller School of Medicine.

82.     The University subsequently suspended Mr. Lowman's PEP pending investigation.

83.     Given the immense mental health difficulties Mr. Lowman faced associated with the hostility, discrimination, and retaliation he endured, Mr. Lowman thereafter took eleven (11) weeks of continuous FMLA leave from August 7 through October 23, 2023.

84.     During Mr. Lowman's leave, he was told he would have a new supervisor beginning on October 1, 2023.

### Mr. Lowman Returns from FMLA Leave and Is Retaliated Against

85.     On or around October 20, 2023—three days prior to Mr. Lowman's return—Mr. Lowman was told Dr. Atkins would continue being his supervisor.

13

86.     Upon Mr. Lowman's return, Dr. Atkins reinstated his PEP and began treating him worse than ever before.

87.     Indeed, throughout November 2023, Dr. Atkins mocked Mr. Lowman's anxiety in meetings in front of other faculty and staff, specifically by speaking so exaggeratedly slow in order to demean him for what she portrayed as Mr. Lowman having an intellectual disability.

88.     Dr. Atkins also took away several of Mr. Lowman's job responsibilities, such as managing teaching compensation and leading weekly staff meetings, to the point that Mr. Lowman was left with virtually nothing to do.

89.     On or around November 13, 2023, Mr. Lowman filed another complaint, this time against Dr. Atkins for her mocking Mr. Lowman's ADA protected disability.

90.     On or around November 26, 2023—after Mr. Lowman learned that Dr. Atkins offered four heterosexual women lucrative retention packages over the course of 2023 regardless of their performance—Mr. Lowman filed another complaint about sex and gender discrimination because he was not treated the same when he had a competing job offer.

**Mr. Lowman Files a Charge of Discrimination and Retaliation and Is Promptly Terminated**

91.     Despite Mr. Lowman's consistent, repeated complaints—complaints about sex and gender discrimination, ADA discrimination, retaliation, and hostile work environment discrimination and retaliation—the University either failed to investigate or found no evidence of discrimination or retaliation.

92.     Yet in the same vein, the University has acknowledged that Mr. Lowman has been treated unprofessionally on multiple occasions.

93.     Left with little recourse, on or around January 3, 2024, Mr. Lowman dual-filed a charge of discrimination and retaliation with the U.S. Equal Employment Opportunity

14

Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"), bearing charge number 510-2024-02891.

94.     Six days later, Dr. Atkins terminated Mr. Lowman's employment.

95.     On or around January 11, 2024, Mr. Lowman amended his charge to include facts surrounding his termination.

96.     Over one-hundred eighty (180) days have elapsed since the filing of Mr. Lowman's charge with the FCHR. Accordingly, Mr. Lowman has exhausted his administrative remedies pursuant to section 760.11, *Florida Statutes*, and he can therefore bring claims of discrimination and retaliation under the Florida Civil Rights Act ("FCRA").

97.     On or around August 6, 2024, Mr. Lowman was issued a Notice of his Right to Sue from the EEOC. Accordingly, Mr. Lowman has exhausted his administrative remedies and he can therefore bring claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

98.     Mr. Lowman timely files suit to vindicate his rights under Florida and federal law.

### COUNT I — VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: SEX/GENDER DISCRIMINATION
### (as against Defendant University of Miami)

99.     Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth at herein.

100.    This is an action for violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e-2(a)(1) ("Title VII"), which provides, in pertinent part: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."

101.    At all times material hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 2000e(f).

102.    At all times material hereto, Defendant was an Employer as defined by 42 U.S.C. § 2000e(b).

103.    Plaintiff is a homosexual male, and as such, is a member of a protected class under Title VII. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 660 (2020) ("[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.").

104.    At all times material hereto, Plaintiff was qualified for the position he held.

105.    Defendant, through the conduct of its owners, agents, servants, and/or employees, discriminated against Plaintiff with respect to his compensation, terms, conditions, or privileges of employment on the basis of his sex/gender and by discharging Plaintiff's employment on the basis of his sex/gender.

106.    Specifically, Defendant discriminated against Plaintiff due to his sex/gender by, *inter alia*, issuing him a poor performance review, issuing him a PEP, forcing him to issue the only other homosexual male a PEP, micromanaging him, subjecting him to disparate oversight, subjecting him to aggressive and obsessive oversight, failing and/or refusing to investigate his claims of discrimination, harassing him, treating him in a disrespectful and hostile manner, demeaning, degrading, and emotionally abusing him, intentionally hindering him from being able to complete the basic functions of his job, failing to offer him a retention package, denying him opportunities for advancement, terminating his employment, and more.

107.    Defendant's actions, as described above, constitute prohibited employment practices in violation of Title VII.

108.    Plaintiff's similarly situated heterosexual and female colleagues were not subjected to the same adverse actions.

109.    Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's sex/gender was, at a minimum, a motivating factor in Defendant's adverse employment decisions.

110.    As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

111.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

112.    Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages from Defendant.

113.    Plaintiff, pursuant to 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's

fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

### COUNT II — VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: HOSTILE WORK ENVIRONMENT
### (as against Defendant University of Miami)

114.     Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth at herein.

115.     This is an action for violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e-2(a)(1) ("Title VII"), which provides, in pertinent part: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."

116.     At all times material hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 2000e(f).

117.     At all times material hereto, Defendant was an Employer as defined by 42 U.S.C. § 2000e(b).

118.     Plaintiff is a homosexual male, and as such, is a member of a protected class under Title VII. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 660 (2020) ("[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.").

119.     At all times material hereto, Plaintiff was qualified for the position he held.

120.     Defendant, through the conduct of its owners, agents, servants, and/or employees, discriminated against Plaintiff on the basis of Plaintiff's sex/gender by permeating the workplace with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive

enough to alter the conditions of Plaintiff's employment and create an abusive working environment.

121.    Specifically, Defendant subjected Plaintiff to, *inter alia*, frequent derogatory comments and slurs, disrespectful, demeaning, degrading, harassing, hostile, aggressive, and/or emotionally abusive behavior, and other egregious treatment due to Plaintiff's sex/gender.

122.    Defendant is responsible for the aforementioned actions, as the hostile work environment was created by a supervisor with immediate or successively higher authority over the Plaintiff.

123.    Defendant is responsible for the aforementioned actions, as Defendant: (i) knew or should have known about the hostile work environment; and (ii) failed to take appropriate remedial action.

124.    The effect of Defendant's conduct has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee on the basis of his sex/gender.

125.    Defendant's actions, as described above, constitute prohibited employment practices in violation of Title VII.

126.    Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's sex/gender was, at a minimum, a motivating factor in Defendant's hostile work environment.

127.    As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic and emotional distress damages, all to his detriment, in an amount to be determined according to proof.

128.    Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil

motive amounting to malice, and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to section 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages from Defendant.

129.    Plaintiff, pursuant to 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT III — VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: RETALIATION
### (as against Defendant University of Miami)

130.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

131.    This is an action for violation of Title VII's opposition clause, which provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997) (differentiating Title VII's "opposition clause" from Title VII's "participation clause").

132.    Discrimination based on sex/gender and retaliation for complaining about same are unlawful employment practices under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."); 42 U.S.C. § 2000e-3(a).

133.    At all times material hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 2000e(f).

134.    At all times material hereto, Defendant was an Employer as defined by 42 U.S.C. § 2000e(b).

135.    Plaintiff is a homosexual male, and as such, is a member of a protected class under Title VII.

136.    At all times material hereto, Plaintiff was qualified for the position he held.

137.    Defendant, through the conduct of its owners, agents, servants, and/or employees, retaliated against Plaintiff after Plaintiff opposed Defendant's discriminatory and retaliatory practices against him on the basis of his sex/gender.

138.    Specifically, Defendant retaliated against Plaintiff by, *inter alia*, issuing him a poor performance review, issuing him a PEP, forcing him to issue the only other homosexual male a PEP, micromanaging him, subjecting him to disparate oversight, subjecting him to aggressive and obsessive oversight, failing and/or refusing to investigate his claims of discrimination, harassing him, treating him in a disrespectful and hostile manner, demeaning, degrading, and emotionally abusing him, aggressively pushing his team members to help create a false paper trail to justify his termination, intentionally hindering him from being able to complete the basic functions of his job, failing to offer him a retention package, denying him opportunities for advancement, terminating his employment, and more.

139.    Defendant's adverse retaliatory actions constitute prohibited retaliatory employment practices in violation of Title VII.

140.    Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's opposition to Defendant's unlawful discriminatory and retaliatory practices was, at a minimum, a motivating factor in Defendant's adverse employment actions.

141.    As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

142.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

143.    Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages from Defendant.

144.    Plaintiff, pursuant to 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

### COUNT IV — VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: RETALIATION
### (as against Defendant University of Miami)

145.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

146.    This is an action for violation of Title VII's participation clause, which provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997) (differentiating Title VII's "opposition clause" from Title VII's "participation clause").

147.    At all times material hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 2000e(f).

148.    At all times material hereto, Defendant was an Employer as defined by 42 U.S.C. § 2000e(b).

149.    Plaintiff is homosexual male, and as such, is a member of a protected class under Title VII.

150.    At all times material hereto, Plaintiff was qualified for the position he held.

151.    Defendant, through the conduct of its owners, agents, servants, and/or employees, retaliated against Plaintiff after Plaintiff made a charge, testified, assisted, and/or participated in investigations, proceedings, and/or hearings, including, but not limited to Plaintiff's dual-filed charge of discrimination bearing charge number 510-2024-02891 (hereinafter "Protected Participation").

152.    Specifically, Defendant retaliated against Plaintiff by terminating his employment.

153.    Defendant's adverse retaliatory action constitutes a prohibited retaliatory employment practice in violation of Title VII.

154.    Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's Protected Participation was, at a minimum, a motivating factor in Defendant's adverse employment action.

155.    As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

156.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

157.    Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages from Defendant.

158.    Plaintiff, pursuant to 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's

fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

### COUNT V — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992: SEX/GENDER DISCRIMINATION (Fla. Stat. § 760.10(1)(a)) (as against Defendant University of Miami)

159.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth at herein.

160.    This is an action for violation of the Florida Civil Rights Act ("FCRA"), which provides, in pertinent part: "It is an unlawful employment practice for an employer [t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." *See* Fla. Stat. § 760.10(a)(1).

161.    At all material times hereto, Plaintiff was an Employee of Defendant and Defendant was an Employer as defined by section 760.02(7), *Florida Statutes*.

162.    Plaintiff is a homosexual male, and as such, is a member of a protected class under the FCRA. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 660 (2020) ("[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.").

163.    At all times material hereto, Plaintiff was qualified for the position he held.

164.    Defendant, through the conduct of its owners, agents, servants, and/or employees, discriminated against Plaintiff with respect to his compensation, terms, conditions, or privileges of employment on the basis of his sex/gender, and by discharging Plaintiff's employment on the basis of his sex/gender.

165. Specifically, Defendant discriminated against Plaintiff due to his sex/gender by, *inter alia*, issuing him a poor performance review, issuing him a PEP, forcing him to issue the only other homosexual male a PEP, micromanaging him, subjecting him to disparate oversight, subjecting him to aggressive and obsessive oversight, failing and/or refusing to investigate his claims of discrimination, harassing him, treating him in a disrespectful and hostile manner, demeaning, degrading, and emotionally abusing him, intentionally hindering him from being able to complete the basic functions of his job, failing to offer him a retention package, denying him opportunities for advancement, terminating his employment, and more.

166. Defendant's actions, as described above, constitute prohibited employment practices in violation of the FCRA.

167. Plaintiff's similarly situated heterosexual and female colleagues were not subjected to the same adverse actions.

168. Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's sex/gender was, at a minimum, a motivating factor in Defendant's adverse employment decisions.

169. As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

170. As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

171.     Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is entitled to recover punitive damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

172.     Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

### COUNT VI — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992: HOSTILE WORK ENVIRONMENT (Fla. Stat. § 760.10(1)(a)) (as against Defendant University of Miami)

173.     Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth at herein.

174.     This is an action for violation of the Florida Civil Rights Act ("FCRA"), which provides, in pertinent part: "It is an unlawful employment practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . [or] handicap . . . ." *See* Fla. Stat. § 760.10(a)(1).

175.     At all material times hereto, Plaintiff was an Employee of Defendant and Defendant was an Employer as defined by section 760.02(7), *Florida Statutes*.

176.     Plaintiff is a homosexual male, and as such, is a member of a protected class under the FCRA. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 660 (2020) ("[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.").

177.     Plaintiff is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that Plaintiff held with Defendant. He is therefore a qualified individual with a handicap. *See* 42 U.S.C. § 12111(8).

178.     As a qualified individual with a handicap, Plaintiff is a member of a protected class under the FCRA.

179.     At all times material hereto, Plaintiff was qualified for the position he held.

180.     Defendant, through the conduct of its owners, agents, servants, and/or employees, discriminated against Plaintiff on the basis of Plaintiff's sex/gender and/or handicap by permeating the workplace with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive enough to alter the conditions of Plaintiff's employment and create an abusive working environment.

181.     Specifically, Defendant subjected Plaintiff to, *inter alia*, frequent derogatory comments and slurs, disrespectful, demeaning, degrading, harassing, hostile, aggressive, and/or emotionally abusive behavior, and other egregious treatment due to Plaintiff's sex/gender and/or handicap.

182.     Defendant is responsible for the aforementioned actions, as the hostile work environment was created by a supervisor with immediate or successively higher authority over the Plaintiff.

183.     Defendant is responsible for the aforementioned actions, as Defendant: (i) knew or should have known about the hostile work environment; and (ii) failed to take appropriate remedial action.

184.     The effect of Defendant's conduct has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee on the basis of his sex/gender and/or handicap.

185.     Defendant's actions, as described above, constitute prohibited employment practices in violation of the FCRA.

186.     Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's sex/gender and/or handicap was, at a minimum, a motivating factor in Defendant's hostile work environment.

187.     As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic and emotional distress damages, all to his detriment, in an amount to be determined according to proof.

188.     Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is entitled to recover punitive damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

189.     Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

### COUNT VII — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992: RETALIATION (Fla. Stat. § 760.10(7)) (as against Defendant University of Miami)

190.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

191.    This is an action for violation of the FCRA's opposition clause, which provides, in pertinent part: "It is an unlawful employment practice for an employer . . . [t]o discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section . . . ." Fla. Stat. § 760.10(7); *see also Carter v. Health Management Associates*, 989 So. 2d 1258, 1263 (Fla. 2d DCA 2008) (differentiating the FCRA's "opposition clause" from the FCRA's "participation clause").

192.    At all times material hereto, Plaintiff was an Employee of Defendant and Defendant was an Employer as defined by section 760.02(7), *Florida Statutes*.

193.    Plaintiff is a homosexual male and as such, is a member of a protected class under the FCRA.

194.    At all times material hereto, Plaintiff was qualified for the position he held.

195.    Defendant, through the conduct of its owners, agents, servants, and/or employees, retaliated against Plaintiff after Plaintiff opposed Defendant's discriminatory and retaliatory practices against him on the basis of his sex/gender.

196.     Specifically, Defendant retaliated against Plaintiff by, *inter alia*, issuing him a poor performance review, issuing him a PEP, forcing him to issue the only other homosexual male a PEP, micromanaging him, subjecting him to disparate oversight, subjecting him to aggressive and obsessive oversight, failing and/or refusing to investigate his claims of discrimination, harassing him, treating him in a disrespectful and hostile manner, demeaning, degrading, and emotionally abusing him, aggressively pushing his team members to help create a false paper trail to justify his termination, intentionally hindering him from being able to complete the basic functions of his job, failing to offer him a retention package, denying him opportunities for advancement, terminating his employment, and more.

197.     Defendant's adverse retaliatory actions constitute prohibited retaliatory employment practices in violation of the FCRA.

198.     Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's opposition to Defendant's unlawful discriminatory and retaliatory practices was, at a minimum, a determining factor in Defendant's adverse employment actions.

199.     As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

200.     As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

201.     Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is entitled to recover punitive damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

202.     Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT VIII— VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992: RETALIATION (Fla. Stat. § 760.10(7))
### (as against Defendant University of Miami)

203.     Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

204.     This is an action for violation of the FCRA's participation clause, which provides, in pertinent part: "It is an unlawful employment practice for an employer . . . [t]o discriminate against any person . . . because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section." Fla. Stat. § 760.10(7); *see also Carter v. Health Management Associates*, 989 So. 2d 1258, 1263 (Fla. 2d DCA 2008) (differentiating the FCRA's "opposition clause" from the FCRA's "participation clause").

205.    At all times material hereto, Plaintiff was an Employee of Defendant and Defendant was an Employer as defined by section 760.02(7), *Florida Statutes*.

206.    Plaintiff is a homosexual male and as such, is a member of a protected class under the FCRA.

207.    At all times material hereto, Plaintiff was qualified for the position he held.

208.    Defendant, through the conduct of its owners, agents, servants, and/or employees, retaliated against Plaintiff after Plaintiff made a charge, testified, assisted, and/or participated in investigations, proceedings, and/or hearings, including, but not limited to Plaintiff's dual-filed charge of discrimination bearing charge number 510-2024-02891 (hereinafter "Protected Participation").

209.    Specifically, Defendant retaliated against Plaintiff by terminating his employment.

210.    Defendant's adverse retaliatory action constitutes a prohibited retaliatory employment practice in violation of the FCRA.

211.    Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's Protected Participation was, at a minimum, a determining factor in Defendant's adverse employment action.

212.    As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

213.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

214.    Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is entitled to recover punitive damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

215.    Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT IX — VIOLATION OF FLORIDA'S PRIVATE WHISTLEBLOWER ACT
### (as against Defendant University of Miami)

216.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

217.    Section 448.102(1) of Florida's Private Sector Whistleblower Act provides: "An employer may not take any retaliatory personnel action against an employee because the employee has . . . [d]isclosed . . . to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or

practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice."

218.   At all times material hereto, Plaintiff was an Employee as defined by section 448.101(2), *Florida Statutes*.

219.   At all times material hereto, Defendant was an Employer as defined by section 448.101(3), *Florida Statutes*.

220.   Plaintiff disclosed, or threatened to disclose, to an appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation—and did so after having brought, in writing, the activity, policy, or practice to the attention of a supervisor or the employer, and afforded the employer a reasonable opportunity to correct the activity, policy, or practice—and was retaliated against as a direct result of same, which constitutes a violation of Florida's Private Sector Whistleblower Act.

221.   Specifically, Plaintiff issued multiple written complaints to Defendant regarding the illegal sex/gender discrimination, disability/handicap discrimination, hostile work environment discrimination, and retaliation Plaintiff endured, and after Defendant refused to correct same, Plaintiff dual-filed filed a charge of discrimination and retaliation with the EEOC and FCHR in which Plaintiff alleged Defendant violated Title VII, the FCRA, and the ADA for discriminating against Plaintiff based on Plaintiff's sex/gender and disability/handicap, and retaliating against Plaintiff for making protected complaints.

222.   Defendant wrongfully and illegally retaliated against Plaintiff in violation of section 448.102(1), *Florida Statutes*, by terminating his employment.

223.   As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses

incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

224.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

225.    As a result of Defendants' unlawful acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit pursuant to section 448.104, *Florida Statutes*.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT X — VIOLATION OF FLORIDA'S PRIVATE WHISTLEBLOWER ACT
### (as against Defendant University of Miami)

226.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

227.    Section 448.102(2) of Florida's Private Sector Whistleblower Act provides: "An employer may not take any retaliatory personnel action against an employee because the employee has . . . [p]rovided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer."

228.    At all times material hereto, Plaintiff was an Employee as defined by section 448.101(2), *Florida Statutes*.

229.    At all times material hereto, Defendant was an Employer as defined by section 448.101(3), *Florida Statutes*.

230.    Plaintiff provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, and was retaliated against as a direct result of same, which constitutes a violation of Florida's Private Sector Whistleblower Act.

231.    Specifically, Plaintiff dual-filed filed a charge of discrimination and retaliation with the EEOC and FCHR in which Plaintiff alleged Defendant violated Title VII, the FCRA, and the ADA for discriminating against Plaintiff based on Plaintiff's sex/gender and disability/handicap, and retaliating against Plaintiff for making protected complaints.

232.    Defendant wrongfully and illegally retaliated against Plaintiff in violation of section 448.102(2), *Florida Statutes*, by terminating his employment.

233.    As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

234.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

235.    As a result of Defendants' unlawful acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit pursuant to section 448.104, *Florida Statutes*.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT XI — VIOLATION OF FLORIDA'S PRIVATE WHISTLEBLOWER ACT
### (as against Defendant University of Miami)

236.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

237.    Section 448.102(3) of Florida's Private Sector Whistleblower Act provides: "An employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

238.    "In meeting this standard, however, all that is required is that the 'employee have a good faith, objectively reasonable belief that his activity is protected by the statute.'" *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013) (quoting *Luna v. Walgreen Co.*, 575 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008)) (alterations adopted).

239.    At all times material hereto, Plaintiff was an Employee as defined by section 448.101(2), *Florida Statutes*.

240.    At all times material hereto, Defendant was an Employer as defined by section 448.101(3), *Florida Statutes*.

241.    Plaintiff objected to violations of a law, rule, or regulation, or what he reasonably believed to be violations of a law, rule, or regulation, or refused to participate in same, and was retaliated against as a direct result of same, which constitutes a violation of Florida's Private Sector Whistleblower Act.

242.     Specifically, Plaintiff issued lawful objections, and/or refusals to participate in the discriminatory and retaliatory mistreatment perpetrated upon him by Defendant based upon his sex/gender, disability/handicap, and lawful exercise of his FMLA rights.

243.     Plaintiff had a good faith belief that Defendant discriminated and retaliated against Plaintiff based upon Plaintiff's sex/gender, disability/handicap, and lawful exercise of his FMLA rights, constituting illegal employment practices and thus violations of the law in accordance with Title VII, the FCRA, the ADA, and the FMLA.

244.     Defendant wrongfully and illegally retaliated against Plaintiff in violation of section 448.102(3), *Florida Statutes*, by, *inter alia*: issuing him a poor performance review, issuing him a PEP, forcing him to issue the only other homosexual male a PEP, micromanaged him, subjecting him to disparate oversight, subjecting him to aggressive and obsessive oversight, failing and/or refusing to investigate his claims of discrimination, harassing him, treating him in a disrespectful and hostile manner, demeaning, degrading, and emotionally abusing him, aggressively pushing his team members to help create a false paper trail to justify his termination, intentionally hindering him from being able to complete the basic functions of his job, failing to offer him a retention package, denying him opportunities for advancement, failing to honor his granted accommodations, terminating his employment, and more.

245.     As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

246.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

247.    As a result of Defendants' unlawful acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit pursuant to section 448.104, *Florida Statutes*.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT XII — VIOLATION OF THE AMERICANS WITH DISABILITIES ACT: DISABILITY DISCRIMINATION
### (as against Defendant University of Miami)

248.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth at herein.

249.    This is an action for violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), which provides, in pertinent part: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

250.    At all times material hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 12111(4).

251.    At all times material hereto, Defendant was an Employer as defined by 42 U.S.C. § 12111(5).

252.     Plaintiff is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that Plaintiff held with Defendant. Plaintiff is therefore a qualified individual with a disability. *See* 42 U.S.C. § 12111(8).

253.     As a qualified individual with a disability, Plaintiff is a member of a protected class under the ADA.

254.     At all times material hereto, Plaintiff was qualified for the position he held.

255.     Defendant, through the conduct of its owners, agents, servants, and/or employees, discriminated against Plaintiff with respect to his compensation, terms, conditions, or privileges of employment on the basis of his disability, and by discharging Plaintiff's employment on the basis of his disability.

256.     Specifically, Defendant discriminated against Plaintiff due to his disability by, *inter alia*, issuing him a poor performance review, issuing him a PEP, micromanaging him, subjecting him to disparate oversight, subjecting him to aggressive and obsessive oversight, failing and/or refusing to investigate his claims of discrimination, harassing him, treating him in a disrespectful and hostile manner, demeaning, degrading, and emotionally abusing him, intentionally hindering him from being able to complete the basic functions of his job, failing to offer him a retention package, denying him opportunities for advancement, failing to honor his granted accommodations, terminating his employment, and more.

257.     Defendant's actions, as described above, constitute prohibited employment practices in violation of the ADA.

258.     Plaintiff's similarly situated non-disabled colleagues were not subjected to the same adverse actions.

259.     Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's disability was, at a minimum, a determining factor in Defendant's adverse employment actions.

260.     As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

261.     As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

262.     Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages from Defendant.

263.     Plaintiff, pursuant to 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT XIII — VIOLATION OF THE AMERICANS WITH DISABILITIES ACT: HOSTILE WORK ENVIRONMENT
### (as against Defendant University of Miami)

264.     Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth at herein.

265.     This is an action for violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), which provides, in pertinent part: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

266.     At all times material hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 12111(4).

267.     At all times material hereto, Defendant was an Employer as defined by 42 U.S.C. § 12111(5).

268.     Plaintiff is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that Plaintiff held with Defendant. Plaintiff is therefore a qualified individual with a disability. *See* 42 U.S.C. § 12111(8).

269.     As a qualified individual with a disability, Plaintiff is a member of a protected class under the ADA.

270.     At all times material hereto, Plaintiff was qualified for the position he held.

271.     Defendant, through the conduct of its owners, agents, servants, and/or employees, discriminated against Plaintiff on the basis of Plaintiff's disability by permeating the workplace with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive

enough to alter the conditions of Plaintiff's employment and create an abusive working environment.

272. Specifically, Defendant subjected Plaintiff to, *inter alia*, frequent derogatory comments and slurs, disrespectful, demeaning, degrading, harassing, hostile, aggressive, and/or emotionally abusive behavior, and other egregious treatment due to Plaintiff's disability.

273. Defendant is responsible for the aforementioned actions, as the hostile work environment was created by a supervisor with immediate or successively higher authority over the Plaintiff.

274. The effect of Defendant's conduct has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee on the basis of his disability.

275. Defendant's actions, as described above, constitute prohibited employment practices in violation of the ADA.

276. As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic and emotional distress damages, all to his detriment, in an amount to be determined according to proof.

277. Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages from Defendant.

278. Plaintiff, pursuant to section 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT XIV — VIOLATION OF THE AMERICANS WITH DISABILITIES ACT: RETALIATION
### (as against Defendant University of Miami)

279.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

280.    This is an action for violation of the ADA's opposition clause, which provides, in pertinent part: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a); *see also Parker v. Econ. Opportunity for Savannah-Chatham Cnty. Area, Inc.*, 587 F. App'x 631, 633–34 (11th Cir. 2014) (differentiating the ADA's "opposition clause" from the ADA's "participation clause").

281.    Disability discrimination is an unlawful employment practices under the ADA. *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").

282.    At all times material hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 12111(4).

283.    At all times material hereto, Defendant was an Employer as defined by 42 U.S.C. § 12111(5).

284.    Plaintiff is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that Plaintiff held with Defendant. Plaintiff is therefore a qualified individual with a disability. *See* 42 U.S.C. § 12111(8).

285.    As a qualified individual with a disability, Plaintiff is a member of a protected class under the ADA.

286.    At all times material hereto, Plaintiff was qualified for the position he held.

287.    Defendant, through the conduct of its owners, agents, servants, and/or employees, retaliated against Plaintiff after Plaintiff opposed Defendant's discriminatory practices against him on the basis of his disability.

288.    Specifically, Defendant retaliated against Plaintiff by, *inter alia*, issuing him a poor performance review, issuing him a PEP, micromanaging him, subjecting him to disparate oversight, subjecting him to aggressive and obsessive oversight, failing and/or refusing to investigate his claims of discrimination, harassing him, treating him in a disrespectful and hostile manner, demeaning, degrading, and emotionally abusing him, aggressively pushing his team members to help create a false paper trail to justify his termination, intentionally hindering him from being able to complete the basic functions of his job, failing to offer him a retention package, denying him opportunities for advancement, failing to honor his granted accommodations, terminating his employment, and more.

289.    Defendant's adverse retaliatory actions constitute prohibited retaliatory employment practices in violation of the ADA.

290.    Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's opposition to Defendant's unlawful discriminatory practices was, at a minimum, a determining factor in Defendant's adverse employment actions.

291.    As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

292.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

293.    Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages from Defendant.

294.    Plaintiff, pursuant to 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

*[THIS SPACE LEFT INTENTIONALLY BLANK]*

## COUNT XV — VIOLATION OF THE AMERICANS WITH DISABILITIES ACT: RETALIATION
### (as against Defendant University of Miami)

295.     Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

296.     This is an action for violation of the ADA's participation clause, which provides, in pertinent part: "No person shall discriminate against any individual . . . because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a); *see also Parker v. Econ. Opportunity for Savannah-Chatham Cnty. Area, Inc.*, 587 F. App'x 631, 633–34 (11th Cir. 2014) (differentiating the ADA's "opposition clause" from the ADA's "participation clause").

297.     At all times material hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 12111(4).

298.     At all times material hereto, Defendant was an Employer as defined by 42 U.S.C. § 12111(5).

299.     Plaintiff is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that Plaintiff held with Defendant. Plaintiff is therefore a qualified individual with a disability. *See* 42 U.S.C. § 12111(8).

300.     As a qualified individual with a disability, Plaintiff is a member of a protected class under the ADA.

301.     At all times material hereto, Plaintiff was qualified for the position he held.

302.     Defendant, through the conduct of its owners, agents, servants, and/or employees, retaliated against Plaintiff after Plaintiff made a charge, testified, assisted, and/or participated in investigations, proceedings, and/or hearings, including, but not limited to Plaintiff's dual-filed

charge of discrimination bearing charge number 510-2024-0289 (hereinafter "Protected Participation").

303.    Specifically, Defendant retaliated against Plaintiff by terminating his employment.

304.    Defendant's adverse retaliatory action constitutes a prohibited retaliatory employment practice in violation of the ADA.

305.    Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's Protected Participation was, at a minimum, a determining factor in Defendant's adverse employment action.

306.    As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

307.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

308.    Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages from Defendant.

309.    Plaintiff, pursuant to 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT XVI — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992: HANDICAP DISCRIMINATION (Fla. Stat. § 760.10(1)(a)) (as against Defendant University of Miami)

310.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth at herein.

311.    This is an action for violation of the Florida Civil Rights Act ("FCRA"), which provides, in pertinent part: "It is an unlawful employment practice for an employer [t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . handicap . . . ." *See* Fla. Stat. § 760.10(a)(1).

312.    At all material times hereto, Plaintiff was an Employee of Defendant and Defendant was an Employer as defined by section 760.02(7), *Florida Statutes*.

313.    Plaintiff is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that Plaintiff held with Defendant. Plaintiff is therefore a qualified individual with a handicap. *See* 42 U.S.C. § 12111(8).

314.    As a qualified individual with a handicap, Plaintiff is a member of a protected class under the FCRA.

315.    At all times material hereto, Plaintiff was qualified for the position he held.

316.    Defendant, through the conduct of its owners, agents, servants, and/or employees, discriminated against Plaintiff with respect to his compensation, terms, conditions, or privileges

of employment on the basis of his handicap, and by discharging Plaintiff's employment on the basis of his handicap.

317.   Specifically, Defendant discriminated against Plaintiff due to his handicap by, *inter alia*, issuing him a poor performance review, issuing him a PEP, micromanaging him, subjecting him to disparate oversight, subjecting him to aggressive and obsessive oversight, failing and/or refusing to investigate his claims of discrimination, harassing him, treating him in a disrespectful and hostile manner, demeaning, degrading, and emotionally abusing him, intentionally hindering him from being able to complete the basic functions of his job, failing to offer him a retention package, denying him opportunities for advancement, failing to honor his granted accommodations, terminating his employment, and more.

318.   Defendant's actions, as described above, constitute prohibited employment practices in violation of the FCRA.

319.   Plaintiff's similarly situated non-handicapped colleagues were not subjected to the same adverse actions.

320.   Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's handicap was, at a minimum, a determining factor in Defendant's adverse employment decisions.

321.   As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to: losses incurred in seeking subsequent comparable employment, lost salary, lost wages, lost earnings, lost commissions, lost bonuses, lost employee benefits, back pay and front pay, past, present, and future income, loss of retirement benefits, loss of earning capacity, and other compensatory damages, all to his detriment, in an amount to be determined according to proof.

322.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress and other general damages, all to his detriment, in an amount to be determined according to proof.

323.    Defendant committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in willful and conscious disregard of Plaintiff's federally protected rights. Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is entitled to recover punitive damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

324.    Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT XVII — VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993: INTERFERENCE
### (as against Defendant Coleen Atkins)

325.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

326.    This is an action for violation of the Family Medical Leave Act of 1993 ("FMLA"), which provides, in pertinent part: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

327.    At all times material hereto, Plaintiff was an "eligible employee" within the meaning of the FMLA because Plaintiff had been employed for at least twelve (12) months by Defendant UM and worked for at least 1,250 hours during the previous twelve (12) month period. *See* 29 U.S.C. § 2611(2)(A).

328.    At all times material hereto, Defendant Atkins was an individual "employer" within the meaning of the FMLA because Defendant Atkins acted, directly or indirectly, in the interest of Defendant UM in relation to Plaintiff and had some direct responsibility for the supervision of Plaintiff, including but not limited to the authority to terminate Plaintiff. *See* 29 USC § 2611(4)(A)(ii); 29 C.F.R. § 825.104(d).

329.    Plaintiff required time off from work to care for himself because he suffered from severe anxiety, a serious health condition within the meaning of the FMLA.

330.    Plaintiff requested intermittent FMLA leave, met all the requirements for intermittent FMLA leave, was entitled to intermittent FMLA leave, and after proper notice, attempted to exercise intermittent FMLA leave on June 27, 2023.

331.    On June 27, 2023, Defendant Atkins interfered, restrained, and/or denied Plaintiff the exercise of, or attempted exercise of, his intermittent FMLA leave.

332.    Specifically, during Plaintiff's attempted intermittent FMLA leave on June 27, 2023, Defendant Atkins sent Plaintiff a laborious and highly intensive work request with significant implications for Plaintiff's job security.

333.    Defendant Atkins' interference, restraint, and/or denial of Plaintiff's exercise of, or attempted exercise of, his intermittent FMLA leave interrupted Plaintiff's medical appointment, interfered with his medical care, caused significant undue stress, and exacerbated his medical condition.

334.   Defendant Atkins' interference, restraint, and/or denial constitute prohibited employment practices in violation of the FMLA.

335.   As a direct and proximate result of Defendant Atkins' acts as alleged herein, Plaintiff has suffered and continues to suffer damages in an amount to be determined according to proof.

336.   Defendant Atkins' acts as alleged herein were not done in good faith, and Defendant Atkins had no reasonable grounds for believing her acts were not violative of the FMLA, and as such, Plaintiff, pursuant to 42 U.S.C. § 2617(a)(1)(A)(iii), is entitled to liquidated damages.

337.   Plaintiff, pursuant to 29 U.S.C. § 2617(a)(3), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, COLEEN ATKINS, for damages, liquidated damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

### COUNT XVIII — VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993: RETALIATION
#### (as against Defendant Coleen Atkins)

338.   Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

339.   This is an action for violation of the Family Medical Leave Act of 1993 ("FMLA"), which prohibits an employer from taking any adverse employment actions against an eligible employee because the employee engaged in conduct protected by the FMLA. *See* 29 U.S.C. § 2615(a)(2).

340.    At all times material hereto, Plaintiff was an "eligible employee" within the meaning of the FMLA because Plaintiff had been employed for at least twelve (12) months by Defendant UM and worked for at least 1,250 hours during the previous twelve (12) month period. *See* 29 U.S.C. § 2611(2)(A).

341.    At all times material hereto, Defendant Atkins was an individual "employer" within the meaning of the FMLA because Defendant Atkins acted, directly or indirectly, in the interest of Defendant UM in relation to Plaintiff and had some direct responsibility for the supervision of Plaintiff, including but not limited to the authority to terminate Plaintiff. *See* 29 USC § 2611(4)(A)(ii); 29 C.F.R. § 825.104(d).

342.    Plaintiff required time off from work to care for himself because he suffered from severe anxiety, a serious health condition within the meaning of the FMLA.

343.    Plaintiff requested FMLA leave, met all the requirements for FMLA leave, was approved for FMLA leave, and after proper notice, took eleven continuous weeks of FMLA leave from August 7, 2023 through October 23, 2023. Accordingly, Plaintiff engaged in conduct protected by the FMLA.

344.    Upon Plaintiff's return from protected FMLA leave, Defendant Atkins retaliated against Plaintiff because Plaintiff exercised his rights under the FMLA.

345.    Specifically, Defendant retaliated against Plaintiff by, *inter alia*: reinstituting his PEP; mocking his serious health condition; subjecting him to frequent derogatory comments and remarks; demeaning, degrading, embarrassing, humiliating, and harassing him; emotionally abusing him; subjecting him to aggressive and obsessive oversight; intentionally hindering him from being able to complete the basic functions of his job; terminating his employment; and more.

346.    Defendant Atkins' adverse discriminatory and/or retaliatory actions constitute prohibited employment practices in violation of the FMLA.

347.    Even if Defendant Atkins had legitimate, non-discriminatory reasons, Plaintiff's exercise of his rights under the FMLA was, at a minimum, a negative factor in Defendant Atkins' adverse employment actions. *See* 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies.").

348.    As a direct and proximate result of Defendant Atkins' acts as alleged herein, Plaintiff has suffered and continues to suffer damages in an amount to be determined according to proof.

349.    Defendant Atkins' acts as alleged herein were not done in good faith, and Defendant Atkins had no reasonable grounds for believing her acts were not violative of the FMLA, and as such, Plaintiff, pursuant to 42 U.S.C. § 2617(a)(1)(A)(iii), is entitled to liquidated damages.

350.    Plaintiff, pursuant to 29 U.S.C. § 2617(a)(3), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, COLEEN ATKINS, for damages, liquidated damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

*[THIS SPACE LEFT INTENTIONALLY BLANK]*

## <u>COUNT XIX — VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993: RETALIATION</u>
### (as against Defendant University of Miami)

351.     Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 98 above, as though fully set forth herein.

352.     This is an action for violation of the Family Medical Leave Act of 1993 ("FMLA"), which prohibits an employer from taking any adverse employment actions against an eligible employee because the employee engaged in conduct protected by the FMLA. *See* 29 U.S.C. § 2615(a)(2).

353.     At all times material hereto, Plaintiff was an "eligible employee" within the meaning of the FMLA because Plaintiff had been employed for at least twelve (12) months by Defendant and worked for at least 1,250 hours during the previous twelve (12) month period. *See* 29 U.S.C. § 2611(2)(A).

354.     At all times material hereto, Defendant was an "employer" within the meaning of the FMLA because Defendant employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year. *See* 29 U.S.C. § 2611(4)(A)(i).

355.     Plaintiff required time off from work to care for himself because he suffered from severe anxiety, a serious health condition within the meaning of the FMLA.

356.     Plaintiff requested FMLA leave, met all the requirements for FMLA leave, was approved for FMLA leave, and after proper notice, took eleven continuous weeks of FMLA leave from August 7, 2023 through October 23, 2023. Accordingly, Plaintiff engaged in conduct protected by the FMLA.

357.    Upon Plaintiff's return from protected FMLA leave, Defendant, through the conduct of its owners, agents, servants, and/or employees, retaliated against Plaintiff because Plaintiff exercised his rights under the FMLA.

358.    Specifically, Defendant retaliated against Plaintiff by, *inter alia*: reinstituting his PEP; mocking his serious health condition; subjecting him to frequent derogatory comments and remarks; demeaning, degrading, embarrassing, humiliating, and harassing him; emotionally abusing him; subjecting him to aggressive and obsessive oversight; intentionally hindering him from being able to complete the basic functions of his job; terminating his employment; and more.

359.    Defendant's adverse discriminatory and/or retaliatory actions constitute prohibited employment practices in violation of the FMLA.

360.    Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's exercise of his rights under the FMLA was, at a minimum, a negative factor in Defendant's adverse employment actions. *See* 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies.").

361.    As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer damages in an amount to be determined according to proof.

362.    Defendant's acts as alleged herein were not done in good faith, and Defendant had no reasonable grounds for believing her acts were not violative of the FMLA, and as such, Plaintiff, pursuant to 42 U.S.C. § 2617(a)(1)(A)(iii), is entitled to liquidated damages.

363.    Plaintiff, pursuant to 29 U.S.C. § 2617(a)(3), is also entitled to recover reasonable attorney's fees and costs of said suit in an amount to be determined according to proof.

**WHEREFORE**, Plaintiff, CHARLES LOWMAN, respectfully requests this Court enter judgment against Defendant, UNIVERSITY OF MIAMI, for damages, liquidated damages, interest, costs, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

As to each count, Plaintiff, CHARLES LOWMAN, hereby demands a trial by jury on all issues so triable.

Dated this 30th day of August, 2024.

Respectfully submitted,

By: */s/ Reid Levin*
Reid Levin, Esq.
Florida Bar No. 1038933
**Reid Levin, PLLC**
P.O. Box 880682
Boca Raton, Florida 33488
Phone: (561) 866-6089
Email: reid@reidlevinpllc.com

*Attorney for Plaintiff Charles Lowman*